## STATE v. LEE LIM.

No. 5041.  Decided February 4, 1932.  (7 P. [2d] 825.)

*King & King,* of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., for the State.

FOLLAND, J.

The defendant, on October 13, 1926, in the district court of Salt Lake county, entered a plea of guilty to the charge of murder in the second degree, and was sentenced by the court to an indeterminate term of imprisonment in the Utah State Prison of between ten years and life. Pursuant to this sentence, defendant was delivered to the warden of the state prison and remained imprisoned until released on habeas corpus proceedings in January, 1930. *Lee Lim* v. *Davis,* 75 Utah 245, 284 P. 323, 325. In that case this court held the indeterminate sentence void for indefiniteness because not authorized by statute, Comp. Laws Utah 1917, § 8026, providing for a definite term of imprisonment of not less than ten years and which may be for life, and therefore furnished no authority for defendant's incarceration in the state prison. He was thereupon released from custody, but was immediately thereafter apprehended on warrant of arrest issued out of the district court of Salt Lake county and brought before that court for sentence on February 15, 1930. The defendant objected to the jurisdiction of the district court, and, without waiving such objection, under-

took to withdraw his plea of guilty and enter a plea of not guilty. The court denied defendant's right to withdraw his plea and substitute another. After the required formalities, a sentence of imprisonment at hard labor in the state prison for a term of ten years to begin October 13, 1926, was duly pronounced. From this sentence defendant appeals and assigns error as follows:

"1. That the District Court had lost jurisdiction upon appellant to pass sentence upon him on February 15, 1930.

"2. That the court erred in refusing to allow appellant to withdraw his plea of guilty and enter a plea of not guilty, in accordance with section 8900, Compiled Laws Utah 1917."

The following reasons are urged why the district court was without jurisdiction to pronounce a corrected sentence: The sentence was pronounced after the term at which conviction was had, and not within the time for sentence fixed by statute, Comp. Laws Utah 1917, § 9041, "which must be at least two days and not more than ten days after verdict"; it was not imposed within a reasonable time after conviction; defendant was placed in double jeopardy for the same offense; and defendant had entered upon and served part of the void sentence.

One or more of these points were raised and decided contrary to the appellant in each of the cases hereafter cited and discussed, and all of these points are covered by one or more of such cases.

In the case of *Lee Lim* v. *Davis,* supra, a majority of the court held, and this was the decision in the case, that the court would not on habeas corpus determine the question of the jurisdiction of the district court to then pass sentence upon the defendant. The court was unanimous in the view that the first sentence was void. In the prevailing opinion it was said:

"The judgment on conviction based on petitioner's plea of guilty being valid, should be enforced and is enforceable by the pronouncement of a proper sentence, unless the court has lost jurisdiction of the cause by lapse of time to now render a valid judgment."

The case being here on appeal, the district court was directed to make an order releasing the prisoner, but "without prejudice to the rights of the state to take any lawful measure to reassume jurisdiction of the petitioner in order that further proceedings may be had against him according to law."

It is now argued by appellant that, because of the use of this language, and particularly the word "reassume," the decision "could only mean one thing, that is, that the district court had lost jurisdiction because if that court has not lost jurisdiction it would not be necessary for it to 'reassume' jurisdiction." To properly comprehend the meaning of that decision, it is necessary to read more than one sentence or paragraph. From the context, it is clear that no such implication can arise from the language used. The general rule stated in 29 C. J. 175, was quoted with approval in *Lee Lim* v. *Davis,* supra, as follows:

"Where the conviction is valid, but the judgment and sentence is unauthorized, the prisoner will be remanded to the custody of the proper officer in order that further proceedings may be had according to law, or the discharge may be delayed for a reasonable time to permit of further proceedings."

That we did not follow this rule and remand the prisoner to the trial court for sentence can have no effect on the validity of the sentence thereafter imposed. This court did not decide that the trial court was without ■ jurisdiction, but carefully refrained from passing on that question. If the trial court had jurisdiction, we did not deprive it of its power by failure to remand the prisoner for its action.

We are of the view that the district court had jurisdiction of the case and of the defendant, notwithstanding the lapse of approximately three years and four months, and that the sentence pronounced by it on February 15, 1930, was in all respects lawful and valid. The first sentence ■ being void, the jurisdiction of the district court continued over the case and the prisoner until a valid sentence

was imposed. The trial court in pronouncing its corrected sentence took into consideration the time already served by defendant, and fixed the commencement of such term as October 13, 1926, the day the void sentence was pronounced. Whether it was proper for the court to do this need not now be considered, since the defendant is not complaining of this part of the sentence, and, indeed, it is as favorable to him as he could hope for. Neither has the state complained of this feature of the sentence.

The defendant himself was the actor in setting in motion the proceedings by which his sentence was declared void. Had the attack upon the sentence been direct by appeal instead of collateral by writ of habeas corpus there could be no question of the jurisdiction of the district court to impose a proper sentence after the first was declared illegal or void. *State* v. *Carmen,* 44 Utah 353, 140 P. 670; *Murphy* v. *Commonwealth of Massachusetts,* 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154, 70 Am. St. Rep. 266; Id., 177 U. S. 155, 20 S. Ct. 639, 44 L. Ed. 711, affirming *Com.* v. *Murphy,* 174 Mass. 369, 54 N. E. 860, 48 L. R. A. 393, 75 Am. St. Rep. 353; 44 A. L. R. 1212.

The defect in the first sentence did not inhere in the judgment of conviction. The defendant pleaded guilty, and made no attack on any of the proceedings except the sentence. Had he appealed from the illegal sentence, as he had a right to do, notwithstanding his plea of guilty, this court would have set aside the sentence as void and have remanded the case to the trial court for a valid sentence. *State* v. *Carmen,* supra. There is no principle on which it can be successfully maintained that, by serving part of a void sentence instead of appealing from it, but later attacking it in collateral proceedings, the defendant can obtain immunity from being sentenced to the judgment provided by law. *State* v. *Pitcher,* 164 La. 1051, 115 So. 187.

The contention that the sentence of October 26, 1925, is void for the purpose of holding the defendant in the custody of the warden of the state prison, but is valid as a discharge

ment of conviction. The defendant pleaded guilty, and made from the conviction under his plea of guilty, and is effective to the end the prosecution against him, is "illogical in the last degree." Ex parte *Smith*, 152 Cal. 566, 93 P. 191. A void judgment does not operate to divest a court of jurisdiction of the cause in which it is rendered. It is a mere nullity, and is ineffective for any purpose.

"A judgment which is void, as distinguished from one which is merely voidable, or liable to be vacated or set aside for irregularity or other cause, or reversed for error, is a mere nullity; it is not binding on anyone; it raises no lien or estoppel; it does not impair or affect the rights of anyone, unless by the agreement of the parties concerned; it confers no rights upon the party in whose favor it is given, and affords no protection to persons acting under it; it does not even operate as a discontinuance of the action. Such a judgment may be vacated or set aside, even on motion of the party in whose favor it is given, if it is not such a judgment as he sought; but it is not necessary to take any steps to vacate or avoid it until an effort is made to enforce it. A valid judgment may be entered subsequently in disregard of the void judgment." 34 C. J. 509.

Among the cases cited in support of this text is *State* v. *Bates*, 22 Utah 65, 61 P. 905, 83 Am. St. Rep. 768. There the defendant was, charged, convicted and sentenced for murder in the second degree. The offense was committed shortly before Utah became a state and the trial conducted after statehood before a jury of eight persons, as provided by the state Constitution. On appeal to the state Supreme Court, the judgment was affirmed. 14 Utah 293, 47 P. 78, 43 L. R. A. 33. In the meantime, another case, *State* v. *Thompson*, 15 Utah 488, 50 P. 409, involving the legality of a trial before eight jurors for felony committed before statehood was appealed to the Supreme Court of the United States, and it was by that court held that the provision for a jury of eight persons was ex post facto in its application to felonies committed before the territory became a state, and that the trial, conviction, and sentence were void. 170 U. S. 343, 18 S. Ct. 620, 42 L. Ed. 1061. After this decision was announced, the defendant Bates, applied for and ob-

tained his release from the state prison on a writ of habeas corpus. He was immediately rearrested and taken before the district court for trial, although more than two years had passed since his plea was entered. The district court held it had no jurisdiction over the subject-matter or the person of the defendant, and had no authority to try the case, and hence dismissed the case and released the defendant. On appeal by the state, this court held that the void trial, conviction, and sentence were mere nullities, that the case remained pending in the district court as it was before the void trial and judgment, and "as a consequence, upon his release from imprisonment, because of a void judgment, he was again subject to arrest, under the same indictment and upon the same charge, and no plea of once having been put in jeopardy for the same offense can be a bar to a lawful trial, notwithstanding his former conviction stands unreversed." The cause was remanded, with directions to the court below to reinstate the case and proceed in accordance with the decision. We see no substantial difference in principle between that case and this. Here the conviction was valid, but the sentence was void. The void sentence created no rights, nor did it impair or affect any right. The case stood as if no sentence had been imposed, and jurisdiction of the district court continued until a valid judgment was imposed. This must be true, unless by mere lapse of time or because of the provisions of Comp. Laws Utah 1917, § 9041, the trial court lost its jurisdiction over the case and person of the defendant.

It shocks one's conception of good sense and justice to say that a person who has been lawfully convicted of a crime should be relieved from serving the sentence provided by law because the court erred in pronouncing sentence. Certainly the defendant ought not to be set at liberty until he has served the imprisonment which the law requires to be imposed upon him as punishment for his crime, *Halderman's* Case, 53 Pa. Super. Ct. 554, unless he be relieved therefrom by lawful authority.

Our statute, Comp. Laws Utah 1917, § 9041, provides: "After a plea or verdict of guilty, * * * if the judgment is not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which must be at least two days and not more than ten days after verdict," and section 9051 provides: "If no sufficient cause is alleged or appears to the court why judgment should not be pronounced, it must thereupon be rendered." The first judgment was rendered within the time required by the statute, but that judgment, through mistake of the court in its construction and application of the indeterminate sentence law, was in law void and of no effect for any purpose. Under these circumstances, can it be said that jurisdiction was lost because a valid judgment was not pronounced within the ten days of the plea of guilty? Undoubtedly the amendment of 1915, which provided that sentence should be passed not more than ten days after verdict, was enacted pursuant to a sound public policy for the purpose of insuring prompt infliction of penalty upon one convicted of crime. It was not considered desirable that courts indulge in prolonged delays before sentencing convicted criminals. There is nothing in the statute, however, to indicate that the Legislature intended that the court should lose jurisdiction of the cause and that a convicted defendant should be entirely relieved of the punishment provided by law, if by accident, mistake, or design the court failed within ten days to impose a valid sentence, or was prevented from doing so because of the escape of the criminal after conviction and before sentence, or if the convicted person were at large on bail, and failed within that time to present himself for sentence. We think no one would so contend. This court has held the time fixed by the statute is not jurisdictional. *Rose* v. *Dist. Court*, 67 Utah 526, 248 P. 486. If the statute in this particular be regarded as directory within the requirement that sentence, if not pronounced within ten days, should be imposed within a reasonable time, then, in determining what is a reasonable time, all the facts and circumstances should be considered. The minimum term of imprisonment which the court could

impose upon a defendant convicted of second degree murder is ten years. The maximum is life. A sentence for the minimum term, if the defendant earned full credit for good behavior, would be served in five years and ten months. This defendant had served only three years and four months when released on habeas corpus. The defendant has not served even the minimum imprisonment required by law for his offense. Another circumstance to be considered is that the court intended to impose the sentence required by law, but through mistake failed in effecting that purpose, which is quite different to a case where the court for good cause shown determined that the prisoner should receive no punishment, notwithstanding the requirement of the law that sentence be imposed. In view of these circumstances, we cannot say that the time which elapsed between conviction and sentence was unreasonably long.

We think, however, this statutory provision was not intended to cover a situation such as appears in this case where sentence was imposed within the time required by section 9041 but through mistake of law the sentence was void. The California courts have so held. There is sufficient similarity between the law of that state and of this state to justify us in following the same rule. Section 1191 of the Penal Code of California requires that the court appoint a time for pronouncing judgment, "which must not be less than two, nor more than five days after the verdict or plea of guilty." That statute is different from ours, in that it further provides that the court may extend the time not more than ten days for the purpose of hearing or determining a motion for new trial or one in arrest of judgment, or for not more than twenty days to consider the question of probation, and upon request of the defendant for not more than ninety days additional. Section 1202 of the California Penal Code provides that sentence must be pronounced at the time so fixed, and, to prevent courts from arbitrarily ignoring and disobeying the law, it is then further provided that, if the sentence be not pronounced within

the time limited, "the defendant shall be entitled to a new trial." These sections of the California Code have been held to have no application, and are not effective to defeat the jurisdiction of the trial court to pronounce a valid sentence, notwithstanding lapse of time beyond that provided by statute, in cases where the facts were similar to those of the instant case, that is, where a sentence was pronounced within the time but found to be void because of the mistaken application of the indeterminate sentence law, and notwithstanding there were no motions or proceedings of any kind to stay arrest or prevent the rendition of such judgment. In re *Lee,* 177 Cal. 690, 171 P. 958.

It is apparent that section 9041 of our Code has no application to a case where the trial court in good faith attempted to follow the law, but through mistake entered a void judgment instead of a valid one. Our Legislature, however, has made provision with respect to errors and mistakes in the administration of the criminal law in the following language:

"Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding nor any error or mistake therein shall render it invalid unless it shall have actually resulted in a miscarriage of justice." Comp. Laws Utah 1917, § 9365.

This section is sufficiently broad to cover a departure through error from the exact time of pronouncing sentence. The defendant suffers no injustice because he has not been made to suffer even the minimum punishment which the law prescribes for his crime, while a strict application of section 9041 to the circumstance of this case would result in entirely relieving the defendant from punishment for his crime and be a gross miscarriage of justice.

In the absence of statutory provision to the contrary, we must say, as was said in *Beale* v. *Commonwealth,* 25 Pa. 11, quoted with approval and applied to facts substantially the same as here, by Mr. Justice Field in re *Bonner,* 151 U. S. 242, 14 S. Ct. 323, 327, 38 L. Ed. 149:

"The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner, whose guilt is

established by a regular verdict, is to escape punishment altogether because the court committed error in passing the sentence."

An error of the court in imposing sentence is regarded a correctible matter in Ex parte *Lewis*, 51 Mont. 539, 154 P. 713, wherein the court said:

"One of the chief purposes of all legal administration is the prevention of crime, by the due punishment of persons judicially ascertained to have been guilty of crime; and no person whose guilt has been judicially determined is entitled to immunity merely because the trial court having jurisdiction of him and his cause has made a mistake in a correctible matter. We say 'correctible matter' advisedly, because the imposition of sentence is such a matter. 8 R C. L. § 239; note to 3 Ann. Cas. p. 1024 et seq."

All the decisions which we have found or which have been called to our attention based upon facts identical with or similar to the facts present in this case support the conclusion we have reached herein. These cases fall into two general classes: First, those where the question was considered on habeas corpus, and the court either assumed or decided that the trial court had not lost jurisdiction to resentence the defendant, and thereupon directed him held for the further action of the trial court, or the defendant was released without prejudice to further action by the trial court; and, second, cases decided on appeal from a judgment of resentence after the defendant had theretofore been released from custody under the void sentence. All such cases are directly in point, and support the view that the trial court, notwithstanding lapse of time, had jurisdiction to pronounce a valid sentence as provided by law. A leading case is the decision of the United States Supreme Court, In re *Bonner*, 151 U. S. 242, 14 S. Ct. 323, 326, 38 L. Ed. 149. There the defendant attacked by writ of habeas corpus a sentence of the United States District Court imposing imprisonment for a year in the state penitentiary. The sentence was declared void and the defendant released, but without prejudice to the United States to take lawful measures to have the petitioner sentenced in accordance with law upon the

verdict against him. Seven months had passed, during which he was incarcerated under the void sentence. The court, speaking through Mr. Justice Field, said:

"Much complaint is made that persons are often discharged from arrest and imprisonment when their conviction, upon which such imprisonment was ordered, is perfectly correct; the excess of jurisdiction on the part of the court being in enlarging the punishment, or in enforcing it in a different mode or place than that provided by the law. But in such cases there need not be any failure of justice, for, where the conviction is correct, and the error or excess of jurisdition has been as stated, there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence, in order that its defect may be corrected.
\* \* \*

"Some of the state courts have expressed themselves strongly in favor of the adoption of this course, where the defects complained of consist only in the judgment,—in its extent or mode, or place of punishment,—the conviction being in all respects regular. In *Beale* v. *Commonwealth*, 25 Pa. 11, 22, the Supreme Court of Pennsylvania said: 'The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence. If this court sanctioned such a rule, it would fail to perform the chief duty for which it was established.'

"It is true that this language was used in a case pending in the supreme court of a state on writ of error, but if then the court would send the case back to have the error, not touching the verdict, corrected, and justice enforced, there is the same reason why such correction should be made when the prisoner is discharged on habeas corpus for alleged defects of jurisdiction in the rendition of the judgment under which he is held. The end sought by him—to be relieved from the defects in the judgment rendered to his injury—is secured, and at the same time the community is not made to suffer by a failure in the enforcement of justice against him."

This rule was followed in *Bryant* v. *U. S.*, 214 F. 51, 53, a decision by the Circuit Court of Appeals, Eighth Circuit, wherein, on appeal, the court affirmed a corrected sentence by the district court after the prisoner had been released on habeas corpus from imprisonment under a void sentence. The appellant urged lack of jurisdiction in the court to im-

pose a corrected sentence on grounds of double jeopardy and lapse of time. The court said:

"The objection of double jeopardy for the same offense is made. It is well settled that it is not double jeopardy to resentence a prisoner who had his first sentence vacated by writ of error (*Murphy* v. *Massachusetts*, 177 U. S. 155, 20 S. Ct. 639, 44 L. Ed. 711), nor to retry him on a new indictment after a prior indictment, conviction, and sentence have been set aside in a proceeding in error (*Ball* v. *United States*, 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300). The principle of such cases is that a sentence that has been vacated by the action of a prisoner cannot then be put up by him as an obstacle to the futher administration of justice; and we think it immaterial that his attack was collateral, as by habeas corpus, instead of direct, by appeal or writ of error. Here he was the actor, and the result left his conviction unimpaired. *  *  *

"Had his attack on the sentence been direct, clearly jurisdiction would have been retained after the expiration of the trial term, and in sound reason the case should not be different where the attack is collateral. Otherwise it is plain that a gross miscarriage of justice could be accomplished by mere delay of habeas corpus until adjournment of the term at which sentence was imposed. If the first sentence be regarded as having been wholly vacated at the instance of Bryant, the case would then stand upon trial and conviction without sentence, in which view jurisdiction of the unfinished business would remain."

The rule was again followed in *Hammers* v. *U. S.*, 279 F. 265, 266, a decision by the Circuit Court of Appeals, Fifth Circuit, on appeal from a corrected sentence after the defendant had been released on habeas corpus from imprisonment under a void sentence and resentence a year and five months after plea of guilty. The court said:

" The imposition of a void sentence is not an obstacle to the assumption by the court which imposed it of jurisdiction of the convict, in order that a legal sentence may be imposed. Where there is a conviction, accompanied by a void sentence, the court's jurisdiction of the case for the purpose of imposing a lawful sentence is not lost by the expiration of the term at which the void sentence was imposed. The case is to be regarded as pending until it is finally disposed of by the imposition of a lawful sentence.

"If the invalidity of the sentences had been directly attacked, clearly jurisdiction would have been retained after the expiration of the

trial term. In sound reason the case should not be different where the attack is collateral. One duly convicted, but not sentenced as authorized by law, cannot defeat the court's incompletely exercised jurisdiction over him by attacking a void sentence in habeas corpus proceedings instituted after the adjournment of the term at which such void action was taken. *Bryant v. United States,* 214 F. 51, 130 C. C. A. 491.

"This is not a case of a court losing jurisdiction to resentence as a result of a previous imposition of a valid punishment, to which, in whole or in part, the convict was subjected. Hammers was not punished twice for the same offense."

In each of the following cases, on attack by habeas corpus, the appellate court, after declaring the sentence void, remanded the applicant to the trial court for imposition of a lawful sentence, after valid conviction upon verdict of the jury or plea of guilty, upon the theory that such court had jurisdiction to impose a valid sentence notwithstanding lapse of time. We have indicated the time between sentence and release where such information is obtainable from the decision. *State ex rel. Petcoff* v. *Reed,* 138 Minn. 465, 163 N. W. 984 (3 years 8 months); *State* v. *Pitcher,* 164 La. 1051, 115 So. 187 (7 months); *Halderman's* Case, 53 Pa. Super. Ct. 554 (2 or 3 years); *Com.* v. *Ashe,* 293 Pa. 18, 141 A. 723 (1 year 3 months); In re *Harris,* 68 Vt. 243, 35 A. 55 (nearly 3 months); Ex parte *Lewis,* 51 Mont. 539, 154 P. 713; Ex parte *Howard,* 72 Kan. 273, 83 P. 1032; *Johnson* v. *State,* 81 Fla. 783, 89 So. 114; *Hampton* v. *Orme,* 92 Fla. 412, 109 So. 455; Ex parte *Simmons,* 73 Fla. 998, 75 So. 542 (10 years 7 months); In re *Williamson,* 116 Wash. 560, 200 P. 329; *Mahler* v. *Eby,* 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549.

The California Supreme Court has uniformly upheld the jurisdiction of the trial court to reassume jurisdiction of a defendant released on habeas corpus because of a void sentence, and thereafter to pronounce a valid sentence, and also to itself set aside such void sentence and by its own process bring the defendant before it for imposition of a valid sentence notwithstanding the lapse of time. In re *Lee,* 177 Cal.

690, 171 P. 958, a decision of the Supreme Court of California, the petitioner, on habeas corpus, was released from imprisonment under a void sentence, but there had been a valid conviction, and the prisoner was remanded for sentence by the trial court. He had been sentenced to an indeterminate term, but, because the crime had been committed before the passage of the Indeterminate Sentence Act, it was held he should have been sentenced to a definite term. Section 1191 of the Penal Code of California as heretofore stated, provided for pronouncement of sentence within a limited time after verdict. The court held, however, that this section had no application to this kind of a case where sentence, although void, had been imposed. There five months had elapsed between sentence and release on habeas corpus. *People* v. *Booth,* 37 Cal. App. 650, 174 P. 685, is a decision by the District Court of Appeals, Third District. The defendant had been sentenced to an indeterminate term, but, after the decision of In re *Lee,* supra, he wrote the trial judge calling his attention to that decision. The trial court, although defendant had served six months of the sentence, brought the defendant before it, vacated the indeterminate sentence as void, and pronounced a definite sentence. From this judgment the defendant appealed. The court affirmed the sentence holding that the trial court had not lost jurisdiction to pronounce a valid judgment. Thereafter the same defendant sought to be released from the corrected judgment by applying for a writ of habeas corpus, but the writ was denied in re *Booth,* 44 Cal. App. 660, 186 P. 841. *People* v. *Scott,* 39 Cal. App. 128, 178 P. 298, is an appeal from a corrected sentence. The defendant was first sentenced to an indeterminate term and commenced serving his sentence. Eight months later he was brought before the court and resentenced to a definite term; the first sentence being void. He objected to the court's jurisdiction, and on appeal urged that the time fixed by the statute for the passing of sentence had lapsed, and that he was entitled to a new trial; also that the court had lost jurisdiction because he had partly served the void sentence. The court

held against him on both propositions. In re *Fritz,* 179 Cal. 415, 177 P. 157, the Supreme Court, on habeas corpus, declined to hold void a corrected sentence for a definite term imposed ten months after conviction, where the trial court, the indeterminate sentence being void, brought the defendant before it and imposed a sentence for a definite term. In re *McCready,* 179 Cal. 514, 177 P. 459, the Supreme Court reaffirmed the procedure approved in re *Lee,* supra.

In *People* v. *Gibson,* 45 Cal. App. 770, 188 P. 603, the dedefendant was convicted of rape. On appeal, the conviction was affirmed. Thereafter on habeas corpus proceedings the sentence was declared void because indeterminate when it should have been definite. This question had not been raised on his appeal. He was remanded to the trial court, where a definite sentence was imposed. He then appealed from the corrected sentence, and urged that the sentence was void, for the reason that defendant had been put twice in jeopardy for the same offense, and because sentence had not been passed within a reasonable time after conviction. The exact time which had elapsed between conviction and imposition of corrected sentence is not shown, but it is apparent that two or three years must have passed. The court held against appellant on all his contentions. Petition for review of the judgment of the District Court of Appeals was denied by the Supreme Court. 45 Cal. App. 770, 188 P. 603. See, also, In re *Germino,* 38 Cal. App. 497, 176 P. 701; In re *Nichols,* 82 Cal. App. 73, 255 P. 244; Ex parte *Colford,* 68 Cal. App. 308, 229 P. 63; Ex parte *Smith,* 152 Cal. 566, 93 P. 191.

The defendant has cited and relies upon the following cases: *People* v. *Blackburn,* 6 Utah 347, 23 P. 759, 760; In re Flint, 25 Utah 338, 71 P. 531, 532, 95 Am. St. Rep. 853; *Roberts* v. *Howells,* 22 Utah 389, 62 P. 892; *Reese* v. *Olsen,* 44 Utah 318, 139 P. 941; Ex parte *Lange,* 18 Wall. (85 U. S.) 163, 21 L. Ed. 872; *Com.* v. *Morgan,* 278 Pa. 395, 123 A. 337; *Mintie* v. *Biddle* (C. C. A.) 15 F. (2d) 931; *U. S.* v. *Wilson* (C. C.) 46 F. 748; *People* v. *Drysch,* 311

Ill. 342, 143 N. E. 100; *Gillespie* v. *Walker* (C. C. A.) 296 F. 330; *People* v. *Leinecke,* 290 Ill. 560, 125 N. E. 513; *Smith* v. *State,* 188 Ind. 64, 121 N. E. 829, 3 A. L. R. 999; Ex parte *Cox,* 3 Idaho 530, 32 P. 197, 95 Am. St. Rep. 29; Ex parte *Garrity,* 97 Cal. App. 372, 275 P. 480; *Smith* v. *Dist. Court,* 132 Iowa 603, 109 N. W. 1085, 11 Ann. Cas. 296. These cases involve either indefinite suspension of execution of sentence, or the indefinite postponement of sentence, or a sentence partly valid and partly void, and are not in point, since the questions therein decided are entirely different from the question now before us. They rest on entirely different facts, and are supported by reasons that are not applicable here. A reference to the Utah cases cited will be sufficient to show that these cases cannot avail to support the appellant's contentions. In *People* v. *Blackburn,* supra, a defendant was convicted of the crime of involuntary manslaughter, a crime punishable by imprisonment for a term of not to exceed five years. On the day fixed for sentence, the defendant moved the court that sentence be indefinitely suspended during good behavior. The court made an order, reciting that good and sufficient reasons were made to appear therefor, granting the motion and indefinitely suspending sentence during good behavior. A few days later the judge who tried the case and made such order resigned. After his successor took office, the district attorney moved for an order appointing a time for passing sentence. This motion was denied. The district attorney then sought from the Supreme Court a writ of mandate directed to the defendant district judge requiring him to proceed to judgment and sentence. This court, while implying that the trial court would ordinarily be required to impose sentence, denied the writ for other reasons stated as follows:

"While we have no doubt, as before stated, that it is the duty of the court in which a conviction is had to proceed to judgment within the limits prescribed by law for the exercise of its discretion, and that it cannot rightfully exercise the pardoning power by refusing judgment, but that, where the statute prescribing the punishment for

a crime only fixes a maximum punishment, thereby expressly authorizing the court, in its discretion, to fix any degree of punishment from such maximum down to a purely nominal punishment, and it is apparent from the record that the court, in the exercise of such discretion, has determined that the lowest possible punishment should be inflicted, the failure of the court to pass judgment is more a matter of form than of substance. The mandate of this court would only require the performance of a technical duty. For this reason we do not think we are called upon to interfere by issuing the writ asked for. The writ should be denied."

In re *Flint,* supra, this court held that the trial court had no authority to indefinitely suspend the imposition of sentence, since it was in effect an exercise of the pardoning power, and that "when the court suspended judgment indefinitely, and ordered the defendant discharged from custody, it no longer had jurisdiction over him, and all subsequent proceedings in the premises were unauthorized by law, and are therefore void." It is strongly urged that the Flint Case is in point, and therefore decisive of the question we are now considering, but the case rests upon a state of facts so different from the facts of the case at bar that it ought not to be controlling on us in reaching a correct solution of the question before us. The effect of that decision should be restricted to those facts, and not extended to another situation resting upon entirely different facts. The result of the decision in the Flint Case was to give effect to the order of suspension and the discharge of the defendant. This result usually does not follow the entry of a void judgment. The court did not say that the order was void, but held that the trial court divested itself of jurisdiction over the defendant and the case by the order of suspension and discharge of the defendant. This being true, it would undoubtedly follow, as was there held, that the trial court was without power to make another or different order or to thereafter pronounce judgment. There the trial court reached the conclusion that the defendant should not be made to suffer for his crime the punishment provided by statute, at least not presently or during good behavior, and there-

upon suspended the imposition of sentence and discharged the defendant. Here the trial court concluded the defendant should suffer the punishment imposed by the statute, and attempted to pass sentence in compliance with the statutory mandate, but, because of an erroneous interpretation of the law, it imposed a void sentence. Nothing here was intentionally done by the court looking to the discharge of the convicted defendant. The reasons underlying the decision in the Flint Case, the cases cited therein for support, and the cases thereafter decided following the same rule, are pertinent to the facts of such cases, wherein sentence was indefinitely suspended and the defendant discharged, and explain and support the holding that the court in such cases lost jurisdiction to impose a valid sentence. These reasons are wholly foreign and inapplicable to the facts of a case such as this, wherein sentence was imposed, but, because of mistake, the sentence was void. The reasons given in those cases and by text-writers sufficiently indicate that they are inapplicable to this case. In 8 R. C. L. 251, the rule is stated as follows:

"In those jurisdictions wherein the rule prevails that a trial court has no power to grant an indefinite suspension of sentence, the court, by granting such suspension, loses its jurisdiction and cannot pronounce sentence at a subsequent time. In such case, having completed its judicial functions, it has voluntarily surrendered all further control over the case and person, and if the defendant is re-arrested is entitled to be discharged."

In *Weaver* v. *People*, 33 Mich. 296, 1 Am. Cr. Rep. 552, a case cited and relied upon in the Flint Case, it was held that sentence could not be imposed after an indefinite suspension of the imposition of sentence, for the reasons that such action signified that the court intended to let the offender go without punishment and was a practical abandonment of the prosecution. The court said:

"To sentence the prisoner to the penitentiary under such circumstances, and when the trial judge has distinctly said he ought not to be so sentenced, is not supplying his omissions, but is overruling his decision. This we think not admissible, and the sentence was un-

authorized, and the judgment must be reversed, and the prisoner discharged."

In *U. S.* v. *Wilson* (C. C.) 46 F. 748, also cited and relied on in the Flint Case, it was held in effect that the order for suspension of sentence and discharge, having been once made, could not at a later term be revoked. In *Collins* v. *State,* 24 Okl. Cr. 117, 217 P. 896, 899, such action by the trial court was held to be "a practical abandonment of the prosecution." *People* v. *Allen,* 155 Ill. 61, 39 N. E. 568, 41 L. R. A. 473, cited and relied upon in the Flint Case, merely held that where the trial court fails to perform its duty but discharges the prisoner or permits him to go indefinitely it is practically an abandonment of the prosecution and its power and jurisdiction over him ceases and a subsequent sentence is without judicial authority. Other reasons are that the defendant ought not to be held "in fear of punishment which may or may not be inflicted at the pleasure of those in authority." *State ex rel. Dawson* v. *Sapp,* 87 Kan. 740, 125 P. 78, 80, 42 L. R. A. (N. S.) 249. "To allow such power would place the criminal at the caprice of the judge," *People* v. *Barrett,* 202 Ill. 289, 67 N. E. 23, 63 L. R. A. 82, 95 Am. St. Rep. 230, or at the caprice of the prosecuting officer. *Grundel* v. *People,* 33 Colo. 191, 79 P. 1022, 108 Am. St. Rep. 75. In view that the facts are different and the reasons underlying the decisions are entirely inapplicable, the decision in the Flint Case ought to be restricted to the facts of that case and not be extended so as to be a precedent for any other case resting upon entirely different facts.

The other Utah cases cited by appellant are also inapplicable and furnish no support for his contention. *Roberts* v. *Howells,* supra, merely holds that a judgment which imposes imprisonment for nonpayment of a fine due the state, after the right to punish by imprisonment has been exhausted by completion of a jail sentence on the same judgment, is void so far as it attempts to imprison for nonpayment of such fine. *Reese* v. *Olsen,* supra, held that the court

had no power to indefinitely suspend execution of sentence, and that the portion of a judgment suspending execution of the sentence was void and of no effect, but that the judgment of imprisonment must be executed. If that case has any bearing upon the instant case, it would support our conclusions, because by it the court holds that a void portion of judgment is ineffective for any purpose, and leaves the valid portion of the judgment as it was, subject to lawful proceedings to be taken as if the invalid part had never been rendered. The other cases cited by appellant fall into one or the other classifications heretofore discussed. These cases involve situations entirely different to the one here presented, and ought not to be followed or the implications arising therefrom extended to support a case like this where the facts are so entirely different.

The cited case of *State* v. *Gray*, 37 N. J. Law, 368, is to the effect that, on habeas corpus, where the sentence is void, the defendant should be discharged, and that neither the appellate court nor the court below can pass a corrected sentence. On the latter point, the case seems not to have been followed, and is certainly against the great weight of authority.

We hold, therefore, that the district court had jurisdiction to pronounce a valid judgment upon the defendant when the sentence complained of was imposed on February 15, 1930.

The second point urged by appellant is that the court erred in refusing to allow him to withdraw his plea of guilty before pronouncement of the corrected sentence on February 15, 1930. The motion was made by counsel in this language:

"Your honor, Section 8900 grants us power to at any time withdraw our plea and at this time the defendant withdraws his plea of guilty, and asks that a plea of not guilty be entered. I do not care to argue it."

The motion was resisted by the state upon the ground that the statute was not mandatory and that the court had

discretion to refuse the demand. Comp. Laws Utah 1917, § 8900, provides:

"The court may at any time before judgment upon a plea of guilty permit it to be withdrawn and a plea of not guilty substituted."

Several other states have a similar statute. The overwhelming weight of authority is that this provision confers a discretionary power upon the trial court to allow or disallow the change of plea. *State* v. *Walters,* 48 S. D. 322, 204 N. W. 171; *People* v. *Miller,* 114 Cal. 10, 45 P. 986; *State* v. *Powell,* 153 Wash. 110, 279 P. 573; *Cook* v. *State* (Okl. Cr. App.) 281 P. 819; *Penrod* v. *State* (Okl. Cr. App.) 281 P. 160; *People* v. *Dabner,* 153 Cal. 398, 95 P. 880; *People* v. *Cosgrove,* 48 Cal. App. 710, 192 P. 165; *Curran* v. *State,* 53 Or. 154, 99 P. 420. The general rule in the absence of statute is that it is discretionary with the court to permit, or to refuse to permit, a plea of guilty to be withdrawn for the purpose of interposing a plea of not guilty, and the court's discretion in the matter will not be reversed except for an abuse of discretion. 16 C. J. 397.

It was not made to appear that the defendant had entered his plea of guilty in ignorance of his rights or that he was influenced unduly or improperly either by hope or fear, or that it was entered by reason of mistake or misapprehension or undue influence. The motion was not supported by any allegations of fact which called for an exercise of discretion favorable to the request. There was no abuse of discretion by the trial court in refusing to permit defendant to change his plea.

The judgment and sentence of the district court of Salt Lake county is affirmed.

CHERRY, C. J., and EPHRAIM HANSON, J., concur.

STRAUP, J.

I dissent. The defendant Lee Lim and S. E. Yang in the district court by information were charged with the crime of murder in the first degree. The case came on for trial

May 24, 1926. On June 4 the case was submitted to the jury. After deliberating on their verdict for 36 hours, they reported they were unable to agree, and were discharged. The case came on for retrial October 13. At that time the district attorney by leave of court dismissed the case as to Yang, and amended the information as to Lee Lim, charging him with murder in the second degree. Lim pleaded guilty thereto, and waived time for sentence. Thereupon the judgment and sentence of the court was rendered that he be "confined and imprisoned at hard labor in the state prison in and for the State of Utah for an indeterminate term as provided by section 9064, Comp. Laws Utah 1917, and the Sheriff of Salt Lake County is charged with the execution of this order." A commitment in language of the judgment was issued accordingly, and in pursuance thereof Lim on October 16, 1926, was by the sheriff delivered to the warden of the state prison in execution of the judgment. More than three years thereafter Lim, on habeas corpus proceedings, was by this court on December 29, 1929, released and discharged from imprisonment and from the custody of the warden upon the ground that the court was unauthorized to render a judgment of an indeterminate sentence, and that the judgment thus was void. When granting the discharge from imprisonment and from custody of the warden, it was urged that we then remand the prisoner to the district court, with direction that a proper and valid judgment be there rendered and entered. We declined to do so, and refrained from deciding whether the district court then had or had not jurisdiction to further proceed in the cause, or to render a new or another judgment. *Lee Lim* v. *Davis,* 75 Utah 245, 284 P. 323. After the prisoner was discharged and released, he on February 1, 1930, on a new warrant of arrest, was brought before the district court, and, over his objection, and upon the court's refusal to permit him to withdraw his plea of guilty, the court, on February 15, 1930, without any further proceedings had, rendered a judgment that the prisoner be confined in the state prison for a term of ten years, the minimum period for

murder in the second degree, the term to relate back and begin October 13, 1926, at which time the prisoner on the first judgment was delivered to the warden. The court thereupon issued a certificate of probable cause for an appeal, stayed the execution of the judgment, and admitted the prisoner to bail pending the appeal in the sum of $500.

The crucial question thus to be determined is as to whether the district court, three years and four months after the first judgment was pronounced, and after it partly had been executed, still had jurisdiction of the cause and without further proceedings had therein to render the second judgment. In determining that, it is not the question of whether it is or is not deemed "shocking" if it be held the district court had not jurisdiction to render a further or another judgment, for jurisdiction of the court is not dependent upon the extent to which the conscience of the court is or may be shocked. It is dependent upon the power and authority conferred upon the court by law, by the Constitution and the statute to render a judgment. If no such power or authority then existed, none may be assumed or granted on the theory that, if jurisdiction is not exercised, the accused in a particular case may go without sufficient punishment. In safeguarding the rights of the state, those of the accused must not be overlooked, and must also be protected. Jurisdiction to try and punish for crime cannot be acquired otherwise than in the mode prescribed by law, and, if it is not so acquired, any judgment rendered is a nullity. 16 C. J. 176. That the court when the first judgment was rendered had jurisdiction of subject-matter and of the person, and then had jurisdiction of the cause, is undoubted. The pertinent question is, Had the court still jurisdiction and custody of the cause and of the defendant when the second judgment was rendered? I think no one speaking within the law is bold enough to assert that, because a court once had jurisdiction of a cause, it for all time thereafter retained jurisdiction over it. There must be some time after the cause is finally disposed of when the court loses jurisdiction of the cause, except for motions for a new trial,

postponement of sentence, arrest of judgment, or for other proceedings in the cause as may by statute be provided. Hence the general rule is that a court having obtained jurisdiction retains it until the final disposition of the cause; but, after final judgment has been rendered and the parties dismissed and the term of court has ended, the jurisdiction of the court is exhausted, and it can take no further proceedings in the cause, except with respect to the enforcement of the judgment, or, in a proper case, its correction or vacation. 15 C. J. 825. Again, it is well recognized that generally judgments are required to be rendered and entered in the term at which the verdict is rendered or the decision made, and cannot regularly be rendered after the term, unless rendition of the judgment is carried over to a succeeding term by proper record entries necessary to preserve jurisdiction of the case. 34 C. J. 65.

Our statute, Comp. Laws Utah 1917, § 8547, provides that the procedure in criminal cases in the courts of this state shall be as prescribed in the Code of Criminal Procedure; by section 9041, if the judgment is not arrested or a new trial granted, the court must appoint a time for pronouncing judgment which shall be not less than two days and not more than ten days after verdict, at which appointed time, section 9051, if no sufficient cause appears why judgment should not be pronounced, "it must thereupon be rendered." The statute in this particular is unlike the statute of California, and hence the cited California cases are not applicable. Under the statute, no one may successfully contend that the court at all events and under all circumstances is bound to appoint a time for pronouncing judgment not more than ten days after verdict. If a motion for a new trial or arrest of judgment or other proceeding is pending in the cause, the court of course is not required to fix a time for pronouncing judgment until such motion or other proceeding is disposed of. And thereafter and at the time fixed for pronouncing sentence, if sufficient cause is made to appear why judgment should not then be pronounced, the

sentence may be postponed until such matter is disposed of. It is readily conceivable that in some instances a motion or other proceeding in the cause may carry the case over to a term subsequent to the term at which the verdict was rendered, in which case the court has not lost jurisdiction after such motion or proceeding has been disposed of to fix a time and pronounce judgment at a subsequent term. But in such case, after all motions and proceedings in the cause subsequent to verdict have been disposed of and denied, and nothing further made to appear why judgment should not be pronounced, the court is then required to fix a time and pronounce a judgment, if not within ten days after such proceedings have ended, at least within a reasonable time thereafter. Though it be assumed that the statute in such particular is directory, or where no judgment is rendered within the term (we here have a system of terms of courts) in which the verdict was rendered or decision made, and no proceedings had to stay or prevent the rendition of a judgment, and that it may thereafter within a reasonable time be rendered at a subsequent term, yet it may not successfully be contended that more than three years thereafter is a reasonable time, when, as here, each year terms of court have come and gone, terms of judges ended, and judges in office when the first judgment was rendered succeeded by others when the second judgment was rendered. After the first judgment was rendered, there were no motions or proceedings of any kind to stay, arrest, or prevent the rendition of a judgment. That such judgment as so rendered was final and the case finally disposed of may not well be doubted. In obedience thereto, the defendant was delivered to the warden in execution of the judgment and a return of the commitment filed by the sheriff that the judgment had been executed by him as by the commitment commanded. Our Constitution and statute permit an appeal only from a final judgment. Had an appeal been taken from the first judgment, no one, I think, would have contended that the judgment was not final, or that the cause was still pending

in the district court undisposed of, and that thus no appeal from judgment would lie. Hence it is clear that, when the first judgment was rendered, the court rendered a final judgment and finally disposed of the case. In such respect the court fully exhausted its jurisdiction.

But it is said the first judgment was void. So it was. We so held in the habeas corpus proceeding. Still that did not affect the finality of the judgment or as finally disposing of the case. Of course, the judgment being void upon its face, it was a nullity, and subject to attack directly or collaterally whenever and wherever brought in question and was subject to be expunged and vacated at any time within or after the term in which it was rendered, in some instances on motion of the party or parties injured by it, or even on the court's own motion, or on suit brought for such purpose. 3 Bancroft Code Practice and Remedies, p. 2439; 34 C. J. 17; 1 Freeman on Judgments (5th Ed.) 443. All that is readily conceded. But the pertinent question is as to whether the court, regardless of time, whether 3, 10, 20, or more years after the void judgment was rendered, not only could expunge the judgment from the records of the court, but also still had jurisdiction and custody of the cause and of the parties to render a new or another judgment in such cause. I will concede that by some courts on habeas corpus proceedings, where a defendant was imprisoned under a void judgment and was discharged and released from imprisonment, he was remanded to the court in which the judgment was rendered, with directions to pronounce and enter a valid judgment, in some instances, regardless of the time intervening between the two judgments, but in most such cases it merely was assumed, without considering the question, that the court in which the first judgment was rendered still had custody and jurisdiction of the cause and of the parties to render a new and another judgment. The reason given by some of such courts, the cases in which such views are expressed being cited in the prevailing opinion, is, that in a collateral proceeding, wherein

the prisoner or one illegally imprisoned or restrained on a void judgment is released, it in legal effect is the same as setting aside a judgment on direct appeal or writ of error in the cause in which the judgment was rendered. When considered and analyzed, I think the distinction of the two proceedings is manifest. In case of a direct appeal or writ of error, the cause itself from the court in which the void judgment was rendered is transferred to the appellate or reviewing court, thereby giving that court jurisdiction of the cause. When in such case the judgment is held void or modified or whatever order may be made therein by the appellate or reviewing court, the ruling is made on the record of the proceedings in the cause itself; and, when on remittitur the case is remanded to the lower court in which the void judgment was rendered, with directions, the lower court is again vested with jurisdiction to proceed in the cause in accordance with the remittitur. Hence, in such case, no matter what time may have elapsed from the rendition of the judgment in the court below until it was annulled or vacated by the appellate court and the case remanded to the lower court, that court is again vested with jurisdiction of the case to proceed in accordance with the remittitur. In the prevailing opinion, it is said that, had a direct appeal been taken from the judgment which on appeal had been declared void and the case remanded to the court below, with directions to render another and a valid judgment or otherwise to proceed in accordance with the remittitur, the lower court would have had jurisdiction to so proceed, and therefore it is assumed that the district court likewise had jurisdiction of the cause and of the parties when more than three years after the void judgment was rendered and partly executed it on habeas corpus proceedings was declared void. The conclusion does not follow for the reason and as is well stated by Justice Van Syckel in the case of *State* v. *Gray,* 37 N. J. Law, 368, that in habeas corpus proceedings the writ "does not bring up the record of the proceedings and judgment below for review; it operates only on the body of the defendant and raises the single question whether he

is legally in custody"; that the court can simply declare that by virtue of the illegal sentence the defendant cannot longer be restrained of his liberty and that the void judgment is no warrant for restraining the defendant in custody; and, inasmuch as the cause itself and the record of its proceedings in which the judgment was rendered is not before the court granting the writ, that court may not pass on or render a new judgment, nor direct the court below to do so, nor remand the prisoner to the court below when the term at which the void judgment was entered had ended or the judgment partly executed. Such views are also supported by the cases of *State* v. *Addy*, 43 N. J. Law 113, 39 Am. Rep. 547; Ex parte *Lange,* 18 Wall. 163, 21 L. Ed. 872; *Com.* v. *Foster,* 122 Mass. 317, 23 Am. Rep. 326, and cases hereinafter cited.

Such also in effect is the rule stated by Works on Courts and Their Jurisdiction, p. 121, where he says:

"Where a judgment is void on its face, the court has inherent power to set it aside, upon a proper showing, and the statutes authorizing a motion to vacate within a limited time are usually held not to affect this power. But the question sometimes arises whether, after a long space of time has intervened, the judgment can be vacated on motion, or whether it is not necessary to bring suit for that purpose. The right to obtain such relief by motion has been upheld; but the better rule seems to be that no such motion can properly be entertained after the term, or where the time within which to move is fixed by law, after the time limited—and that, after that time, an action is necessary. It must not be understood from this, however, that a court is bound, after the term, to enforce a void judgment. It has control over its process, and may decline to allow it to be used to execute such a judgment, and may arrest its process when issued thereon."

On reflection I think it clear that in habeas corpus proceedings, unaided by certiorari or other proceedings of review, wherein the defendant or prisoner is held illegally imprisoned or restrained and discharged because of a void or unauthorized judgment, that jurisdiction of the cause itself in which the judgment was rendered is not transferred to the court releasing or discharging the prisoner so as to

give it jurisdiction to itself pronounce a judgment in the cause or to direct the court in which the void judgment was rendered to do so and as may be done on appeal or writ of error.

A habeas corpus proceeding is civil and not criminal in its nature. *Fisher* v. *Baker,* 203 U. S. 174, 27 S. Ct. 135, 51 L. Ed. 142, 7 Ann. Cas. 1019, and note, page 1020. It is a collateral and not a direct attack upon the judgment, except where, as in the Supreme Court of the United States, the writ is issued in the exercise of appellate jurisdiction, and is accompanied by a writ of certiorari to bring up the records and proceedings of the inferior court. Note, 23 Am. St. Rep. 108; 12 R. C. L. 1184, 1196. The existence of another remedy does not preclude a resort to the writ to obtain relief from illegal detention. 12 R. C. L. 1188. It is not a proceeding in the criminal action in which the judgment was rendered. It is a new suit brought by the defendant to enforce a civil right of personal liberty. 12 R. C. L. 1184. To render a judgment immune from attack, the court must have had, not only jurisdiction of the subject-matter and of person, but also authority to render the particular judgment in question, and, if either of these elements is wanting, the judgment is void and open to collateral attack and one restrained thereunder entitled to be discharged. 12 R. C. L. 1197.

In some of the cited cases in the prevailing opinion, where on habeas corpus proceeding the defendant or the prisoner was held illegally restrained or imprisoned on a void or unauthorized judgment, and released and discharged from custody and remanded to the inferior or lower court in which the void judgment was rendered to pronounce a valid judgment, such mandate was made without considering or discussing whether such inferior or lower court still had jurisdiction and custody of the cause and of the parties in which the void judgment was rendered. Such is evident from the case of In re *Lee,* 177 Cal. 690, 171 P. 958, and in other cited cases where such an order of remand was made. In other

words, in such case the jurisdiction of the court below was merely assumed. As already suggested, we in the habeas corpus proceedings were urged to determine and hold that the district court still had jurisdiction of the cause and of the parties, and still was authorized and had jurisdiction to render a new and another judgment in the cause, and to remand the defendant to that court to render another judgment as was done In re *Lee,* supra, and in other similar cases, but we declined in such particular to follow such cases, and refused to so remand the defendant to the court below, and declined even to express an opinion as to whether that court still had or had not jurisdiction of the cause and of the defendant to render another or a new judgment, then believing that we did not have jurisdiction of the cause itself in which the void judgment was rendered, and hence had no legal authority to remand the defendant to the court below, and thus absolutely released and discharged the prisoner from custody, without prejudice to the rights of the state to take whatever lawful measures it might have to resume or acquire jurisdiction of the defendant. In such particular we but did what was done in the cited case of In re *Bonner,* 151 U. S. 242, 14 S. Ct. 323, 38 L. Ed. 149, and made the same kind of order as was therein made. And in harmony therewith in the concurring opinion it was stated that upon the petitioner's discharge it would be time enough to determine, what, if any, proceedings may be had in the district court in the cause in which the judgment was rendered to have another judgment rendered and entered, when such proceedings were had and our review sought of them. But now In re *Lee,* supra, and other cases of similar holdings cited in the dissenting opinion on the habeas corpus proceedings are here recited in the prevailing opinion, where in habeas corpus proceedings the defendant or prisoner, on being released and discharged from imprisonment on a void judgment, was remanded to the lower court to pronounce a valid judgment, and hence we on the habeas corpus proceedings ought to have done, but did not do, so. In fact,

the dissenting members took the view that, though the defendant was imprisoned and held in custody by the warden on a void judgment, he nevertheless was not entitled to a discharge or release, but that the warden should be directed to deliver him over to the county sheriff to abide the further judgment of the district court, without considering what, if any, right or authority the sheriff had to receive or hold the defendant, or the district court to render a new or another judgment, in support of which the cases cited in the dissenting opinion are now here recited in the prevailing opinion. If it be intended to indicate or hold that the views expressed and the conclusion reached by the dissenting members in the habeas corpus proceeding were right, and those of the majority wrong, and that those of the dissenting members should now prevail, then why not overrule the holding of the majority in the habeas corpus proceedings and be done with it.

However, as heretofore suggested, we are now confronted with the real question of jurisdiction of the court below. While, as has been seen, a judgment void on its face may at any time be vacated or expunged, yet such action or motion, strictly speaking, is not a proceeding in the action, but is a mere application to have the records purged of an unauthorized and illegal entry. *Mueller* v. *Reimer,* 46 Minn. 314, 48 N. W. 1120. When that is done, whether the court still has jurisdiction of the cause and of the parties to enter a new or another judgment or to further proceed in the case is quite another question. Though a court at some stage of the proceedings of a cause may have had full jurisdiction of subject-matter and of the person, yet at some subsequent stage may lose or may have lost both. 1 Freeman on Judgments (5th Ed.) p. 729. If, when a void judgment is expunged or vacated, the court still has jurisdiction or custody of the cause and of the parties, and its action properly invoked, it may readily be conceded that the court has jurisdiction to render a new or another judgment. If, however, the court has lost jurisdiction of the cause, he cannot do so.

Because a court at some stage of the proceedings had jurisdiction of subject-matter and of the parties when the void judgment was rendered and entered, it does not follow that the court for all time thereafter retained jurisdiction of the cause and of the parties to render a new or another judgment. That, I think, is the effect of the holding in this jurisdiction. In re *Flint*, 25 Utah 388, 71 P. 531, 95 Am. St. Rep. 853, the defendant on February 25, 1902, was convicted of the crime of forgery. The time for sentence was fixed March 5, and was continued to March 12. At that time the court suspended sentence indefinitely, and permitted the defendant to go on his own recognizance. On December 5, on motion of the district attorney, the court ordered the defendant to appear January 5, 1903, for sentence. At that time, and over objections of the defendant that the court had lost jurisdiction, the court sentenced him to the state prison for a term of one year. On habeas corpus proceedings, this court held that the court, though it had jurisdiction of the cause and of the parties when the order or judgment of suspension was rendered, yet was unauthorized to indefitely suspend sentence as was done, and that, when the court did so, and permitted the defendant to go on his own recognizance, the court lost jurisdiction over him, and that all subsequent proceedings were unauthorized to indefinitely suspend sentence as was done, that the order or judgment of suspension was merely erroneous, but was unauthorized, and that it was not within the power of the court to render such a judgment, and that the court eleven months thereafter and after term time had lost jurisdiction to render a new or another judgment. That case is a leading case on the subject. It is cited with approval in many cases both of state and of federal courts. To the same effect, among others, are the following cases, in many of which the Flint Case is cited with approval: *People* v. *Leinecke*, 290 Ill. 560, 125 N. E. 513; *People* v. *Barrett*, 202 Ill. 287, 67 N. E. 23, 63 L. R. A. 82, 95 Am. St. Rep. 230; Ex parte *Singer* (C. C. A.) 284 F. 60; *Grundel*

v. *People,* 33 Colo. 191, 79 P. 1022, 108 Am. St. Rep. 75; *Collins* v. *State,* 24 Okl. Cr. 117, 217 P. 896; *Com.* v. *Morgan,* 278 Pa. 395, 123 A. 337; *Smith* v. *State,* 188 Ind. 64, 121 N. E. 829, 3 A. L. R. 999; *United States* v. *Wilson* (C. C.) 46 F. 748; *Mintie* v. *Biddle* (C. C. A.) 15 F. (2d.) 931, 933, where cases are cited from many different jurisdictions.

These cases proceed on the theory that, in the absence of a statute, the court is without authority and without jurisdiction to render a judgment suspending sentence or indefinitely to defer sentence, that such a judgment is void and of no force or effect, and that thereafter the court after term time lost jurisdiction of the cause and of the parties to render a new or another judgment in the cause. Such a judgment so rendered without authority or power is just as much a void judgment and a nullity as is the first judgment here rendered imprisoning the defendant in the state prison for an indeterminate sentence. The one is no more a mere erroneous judgment than is the other. Both involve the authority and power of the court to render the judgment. If the legal effect of the one is as though no judgment was pronounced or rendered, such, too, is the legal effect of the other. Both were held void because the court had no power or authority to render the judgment. Hence the Flint Case and the rule therein announced supported by, and, as in *Mintie* v. *Biddle,* supra, stated to be, the great weight of authority, may not be disposed of by the mere assertion that it involved a judgment or order of a suspension of sentence or of indefinitely postponing a sentence. Fundamentally the proposition lies deeper than that. The administration of the criminal law requires a court to pronounce judgment when and as by law provided. That must be done as by the statute and the Code prescribed. The court may not lawfully pronounce a binding judgment otherwise. Whenever a judgment in a criminal case is rendered, the court must be able to point to some provision of law authorizing the court to do so. If a court does not fix a day for judgment within ten days after verdict or plea of guilt and

at such appointed time render a judgment as by sections 9041 and 9051 provided, the court nevertheless is required to render judgment within the term at which, or at least within a reasonable time after, the verdict was rendered or plea of guilt entered, unless on motion for a new trial or arrest of judgment or postponement of sentence or for other cause the case is continued for further proceedings, and the defendant by recognizance or otherwise still held amenable to orders and process of the court. After all that, and after a case is finally disposed of and no appeal or writ of error or review taken and no stay of judgment had, the court loses jurisdiction of the cause and of the defendant, and may not years thereafter render a new or another judgment, especially after the first judgment has partly been executed. There is no halo in a void judgment. It is nothing. It is as though no judgment had been pronounced or rendered. Certainly, if the court here had pronounced or rendered no judgment, and the proceedings in the cause after verdict or plea of guilt in no particular postponement continued or arrested, and the defendant no longer in the custody of the court, no one would hardly contend that the court more than three years thereafter still had jurisdiction of the cause and of the parties to pronounce a valid judgment in the cause. To so contend is, as it seems to me, to go back to the "reign of James I., when he sent Sir Walter Raleigh to the block 15 years after his conviction." *People* v. *Reilly*, 53 Mich. 260, 18 N. W. 849, 850.

In the prevailing opinion it is said that the defendant was the actor setting in motion the habeas corpus proceedings by which the judgment was declared void and the defendant released and discharged. What if he did? He had the undoubted right to initiate such proceedings. It was not his fault that the void judgment was rendered against him. It was the fault of the state, the fault of the district attorney, the fault of the court. In no sense may it be said that, because the defendant failed to prosecute a direct appeal from the void judgment, or did not sooner seek his

release from the illegal imprisonment, he is now estopped from challenging the jurisdiction of the court to pronounce the new or further judgment which was rendered against him. For more than three years he was wholly without the custody of the court and in the custody of the warden of the state prison under a commitment of a void judgment sentencing him to imprisonment for an indefinite period between ten years and his natural life. After the commitment was issued, the defendant delivered to the warden, and after the defendant had served more than three years in execution of the judgment, it is difficult to perceive how the case during all such period still was pending in the district court or the defendant still in the custody of the court, and more difficult is it to perceive that the defendant, by seeking and being granted his release from illegal imprisonment and custody, thereby conferred jurisdiction on the court below in which the void judgment was rendered to resume jurisdiction which theretofore clearly had been lost.

The effective administration of the criminal law requires, when one pleads guilty or is convicted of crime, judgment to be promptly and certainly rendered as by the statute and Code provided; and, where the court through no fault or act of the defendant fails to render a judgment, or where the court itself in no particular invited or induced to do so by any act of the defendant renders a void judgment which in legal effect is a nullity, and as though no judgment had been rendered, all proceedings in the cause wholly and finally ended, the jurisdiction of the court in the cause exhausted, the defendant no longer in the custody of the court, the term at which the judgment was rendered wholly ended, and numerous subsequent terms come and gone, and the judgment partly executed, the court may not years thereafter, with no further or other proceedings invoking and conferring jurisdiction, render and enter a new or another judgment. As said by the court in *Mintie* v. *Biddle,* supra:

"Obviously, the matter of the furtherance of the administration of justice is not a unilateral one. The accused is due some modicum of consideration. It is not alone the ends and accommodation of the government which are to be considered and subserved; but those of the defendant as well."

Cases are cited where, in the prosecution of a cause, a void judgment was rendered, and because thereof the accused again prosecuted on a new cause or proceeding for the same offense, and where it was held that the void judgment of the first cause was not a bar to the prosecution in the second cause or proceeding, and could not be interposed as once in jeopardy. I think it apparent such cases have here no application. There, jurisdiction in the second cause or proceeding was not acquired or exercised by or through the first cause or proceeding, but in spite of it. In other words, the jurisdiction acquired was in virtue of the new and not of the old proceeding. The state, when it initiated or instituted the new or second proceeding, may well have done so because of a prerequisite to again clothe the court with jurisdiction lost by it in the first cause or proceeding. There no judgment was rendered in the first cause or proceeding resulting in the void judgment but in the second cause or proceeding. In the case in hand no proceedings in a new case were instituted or initiated, nor even in the cause in which the void judgment was rendered. The state, without any such proceedings, more than three years after the void judgment was rendered, rearrested the accused and summarily caused the second judgment to be rendered. It did so on the theory that, when a court once having had jurisdiction of a cause and of the parties, and though a final judgment was rendered disposing of the case, the parties sent out of court, and the custody of the cause surrendered and no review thereof prosecuted in the cause or other proceedings had therein with respect thereto, yet, if in another and independent cause between different parties wherein the validity of the judgment is brought in question and by a court of competent jurisdiction held void,

the court rendering the void judgment, regardless of time and of its part execution, retained a continuing jurisdiction of the cause in which the judgment was rendered, and, without any new or other proceedings had therein, was clothed with power to render a new and another judgment. I cannot yield assent to such a doctrine.

If because of views herein expressed it be thought the defendant ultimately may go without adequate punishment, let the fault rest where it belongs—on the state, the district attorney, and the court. To meet or prevent consequences of such remisses does not justify a stretching of the statute and the Code of Criminal Procedure, nor a misapplication of fundamental principles of jurisdiction. I think the Flint Case ought to be followed, and the second judgment here, as it was there, declared a nullity.

. Having reached such conclusion, it is unnecessary to consider the ruling refusing the defendant to withdraw his plea of guilty and enter one of not guilty and grant a new trial, except to make the observation that, while on the record it is not shown that the plea of guilty was entered through misapprehension, undue influence, coercion, or promise, neither is it shown that, in the event a new trial had been granted, the evidence of the state because of lapse of time no longer was available or that the state otherwise could not properly have presented its cause as it might have done had the plea of guilty not been entered. No claim was made by the state that its evidence no longer was available. It merely urged that the statute permitting a withdrawal of a plea of guilty before judgment was not mandatory, only discretionary, and should not now be permitted. With respect thereto, the court merely observed that, in order that the question may be settled by the Supreme Court, "the court will deny the right of the defendant to at this time withdraw his plea and to which you may have your exception." The withdrawal was not denied because of an insufficient showing or because to grant it would have been to the prejudice of the state. It was denied to let the Su-

preme Court settle it. And now that is called the exercise of a sound discretion with which we may not interfere. In the administration of the criminal law, I see no reason to hold a tight rein on the defendant and a loose or no rein on the state. If, as is contended, the court still had jurisdiction of the cause, and that the statute permitting a withdrawal of the plea is discretionary, the court, in the proper administration of the law and in order that a sound discretion may be exercised in granting or refusing the withdrawal, was required at least to some extent to inquire into the circumstance of the entry of the plea and as to the prejudice of the state in the event the plea was permitted to be withdrawn and a new trial granted. In such case, I think the "furtherance of the administration of justice is not a unilateral one," and the ends and accommodations of the state alone to be considered and subserved, or the question passed to this court to indulge a presumption of the exercise of a sound discretion when on the record none was exercised and the question merely passed to this court.

ELIAS HANSEN, J. (dissenting.)

In my opinion, the law announced by this court in Re *Flint*, 25 Utah 338, 71 P. 531, 95 Am. St. Rep. 853, and followed in the case of *Mackelprang* v. *Walker*, 74 Utah 121, 277 P. 401, is controlling in this case. The facts in the Flint Case are thus stated in the opinion:

"On the 25th day of February, 1902, the defendant in this case was duly convicted in the Second judicial district court of this state of the crime of forgery. The court made an order directing the defendant to appear March 5, 1902, for sentence. The case was again continued, and March 12, 1902, was fixed as the time for pronouncing judgment. The defendant appeared for sentence on the last-mentioned date, and the court, on its own motion, made and entered the following order: 'The defendant having been convicted of the crime of forgery, and being now before the court to receive sentence, and the court being sufficiently advised, it is ordered that sentence be, and the same is hereby, suspended, and the defendant permitted to go upon his own recognizance.' The defendant, by this order, was, in effect, discharged from custody. On the 5th day of December, 1902, the judge

before whom the defendant was tried and convicted made and entered the following order in the case: 'On motion of A. B. Hayes, Esq., district attorney, it is ordered that said defendant appear before the court for sentence on Monday, January 5, 1903.' On January 5, 1903, the time for fixing sentence was continued until January 12, 1903, on which date the defendant appeared in court, and duly objected to any further proceedings in the premises on the ground that the court had no jurisdiction of the person of the defendant.' The court over-ruled the objection, and sentenced the defendant to the state prison for a term of one year, and made an order duly committing him to the proper officers, with directions that the judgment be enforced."

Lee Lim was sentenced on October 13, 1926, to an indeterminate term in the state prison after he had entered a plea of guilty to a charge of murder in the second degree. On October 15, 1926, he was delivered to the warden of the state prison of Utah, where he remained confined until, on habeas corpus proceedings, he was ordered discharged by an opinion of this court filed on December 31, 1929. After he was discharged and released, a warrant of arrest was issued out of the district court of Salt Lake county, and he was arrested. On February 1, 1930, he was brought before the district court of Salt Lake county. The state requested that a time be fixed for passing sentence. The defendant through his counsel resisted the passing of sentence upon the ground that the court had lost jurisdiction. The objection was overruled. On February 15, 1930, the district court sentenced the defendant to serve ten years in the state prison of Utah, the period to begin as of October 13, 1926.

It will readily be noted that the facts in the Flint Case and the facts in the instant case are in several respects quite unlike, but it does not follow that the Flint Case is not a precedent, and, as such, controlling in this case. The test of whether a prior case is a precedent in a subsequent case must be determined from a comparison, consideration, and a determination of whether or not the underlying principles of law of the two cases are the same, and not from a superficial comparison of the facts in the two cases. The

pertinent inquiry here presented is, "Why had the court jurisdiction to resentence Lim when it did not have jurisdiction to sentence Flint? If the time which elapsed between the verdict or plea of guilty and the imposing of sentence is of importance in determining the question of whether the court did, or did not, have jurisdiction to impose the sentence here complained of, then clearly there is greater reason for holding that the court was without jurisdiction to sentence Lim than there was in holding that the court was without jurisdiction to sentence Flint. Approximately three years and four months elapsed between the time that Lee Lim entered his plea of guilty and the time that the sentence here involved was imposed upon him. Approximately ten and one-half months elapsed between the time that Richard Flint was found guilty and the date when the sentence, which this court held to be a nullity because the court had lost jurisdiction, was imposed upon him. If prejudice, sustained by a delay in imposing sentence, is to be of controlling importance, one who is merely held in suspense and uncertainty for a period of ten and one-half months, as in the Flint Case, has less cause to complain than does one who is imprisoned for three years and four months, as in the case of Lim.

It is said in the prevailing opinion that we need not consider whether it was proper for the trial court to fix the commencement of the term that the defendant should serve as October 13, 1926, the day the void sentence was pronounced, because "the defendant is not complaining of this part of the sentence, and indeed it is as favorable to him as he could hope for. Neither has the state complained of this feature of the sentence." If it be assumed that the trial court had jurisdiction to impose a sentence upon Lim, then the sentence imposed was "as favorable to him as he could hope for," but, if the court was without jurisdiction to impose any term of imprisonment on the defendant, then, and in such case, he had a right to hope for and receive a more favorable result, viz.: a discharge. Nor does the fact that

the state is not complaining affect the question of whether the trial court did or did not have jurisdiction to impose the sentence here under review. If the trial court was without jurisdiction to pronounce any sentence upon the defendant, the failure of the state to complain of the sentence imposed cannot be said to confer such jurisdiction. It is by no means clear, as is apparently assumed in the prevailing opinion, that the legal effect of the sentence here under review entitles Lim to credit for the time he served under the void sentence. Comp. Laws Utah 1917, § 8531, provides that "the term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant at the place of imprisonment. * * *" The law applicable generally to the commencement and duration of imprisonment under a sentence is thus stated in 16 C. J. p. 1304:

"As a rule, the duration of imprisonment must be stated clearly and definitely, although it has been held that, where the period of imprisonment is definitely fixed by statute such period need not be specified in the sentence. As a general rule, the time for imprisonment to commence or to be inflicted is no part of the judgment or sentence proper, and according to the weight of authority, in the absence of a statute requiring it, the time when the imprisonment is to begin or end need not be specified in the sentence, it being sufficient to state merely its duration."

If the time fixed by the trial court for the sentence of the defendant to begin be regarded as no part of the sentence, and if the sentence "commences to run only upon the actual delivery of the defendant at the place of imprisonment," it is difficult to see how Lim may avail himself of any deduction for the term served under the void sentence. Assuming, however, that Lim may take advantage of the deduction attempted to be given him by the sentence here under review, still he had no legal right to have the time which he served under the void sentence deducted from the time which he may have been required to serve under the present sentence. The law applicable in such a case as this is thus stated in 16 C. J. p. 1373:

"Where defendant is confined in the penitentiary under a void or erroneous sentence because of his failure to obtain a suspension of his sentence during the pendency of proceedings in error, it is in no sense a part execution of a legal sentence, and by the rendition and execution of a legal judgment he is not punished twice for the same offense.

"A person released under a writ of habeas corpus after having served a part of a sentence of imprisonment imposed under a void indictment is not entitled to have the time so served credited on a sentence subsequently imposed under a valid indictment."

The following cases support the view that time served under a void sentence is no part of, and may not be deducted from, time served under a subsequent valid sentence. Ex parte *Gunter*, 193 Ala. 496, 69 So. 442; *McCormick* v. *State*, 71 Nev. 505, 99 N. W. 237; *Ogle* v. *State*, 43 Tex. Cr. R. 219, 63 S. W. 1009, 96 Am. St. Rep. 860, 15 Am. Cr. Rep. 321. The great weight of judicial authority is to the effect that, in the absence of statutory provisions to the contrary, there is no legal authority for a court to deduct time served under a void sentence from the time to be served under a subsequent sentence.

When the defendant in this case was taken before the district court on February 15, 1930, for sentence, the case there stood against him on his plea of guilty, which was entered in October, 1926. The fact that the learned trial judge fixed the period of defendant's imprisonment to begin as of October 13, 1926, does not alter the case. That the trial court could properly have fixed the time of the beginning of the sentence here under review as of the date that the sentence was imposed is clear. That it was error to fix (assuming that the legal effect of the sentence does fix) the time that the defendant must serve to begin on October 13, 1926 (the date of the void sentence), would seem equally clear. If Lim was without right to have the time he served under the void sentence deducted from the sentence in question, then it would seem to necessarily follow that the court below was in error in making such deduction. The granting or refusing to grant a deduction for time served under

a void sentence is purely a question of law, and may not well be said to be a question which merely appeals to the discretion of the court. If the court below had authority to either deduct, or refuse to deduct, the time which Lim served under the void sentence from the time that he should serve under the sentence here in question, nevertheless the fact remains that the delay of the court in imposing a valid sentence was prejudicial to him. There still remained the hazard that he would be compelled to serve full time without any deduction for the time served under the void sentence. Such a hazard is certainly as great a cause for complaint by Lim as was the suspense and uncertainty which Flint sustained because of the delay in imposing sentence upon him. By granting the defendant Lim credit for time served under the void sentence, it would seem that the sentence under review of necessity recognized the validity of the prior sentence to the extent of the time actually served. The defendant thus is placed in a position analogous, if not identical, to that of one who has served the valid part of a sentence which is in part void. It is quite generally, if not uniformly, held to be the law that, where a court imposes a sentence, part of which is valid and part of which is void, such court is without jurisdiction to amend the sentence so imposed after the defendant has entered upon the execution of the valid part. If a person is once legally punished for a crime, he may not again be punished for the same crime. To hold otherwise would be to disregard both our state and Federal Constitution, which directs that no man can be twice lawfully punished for the same offense. A number of cases so holding are cited in the prevailing opinion, among them Ex parte *Lange,* 18 Wall. (85 U. S.) 163, 21 L. Ed. 872.

If the trial court had erroneously sentenced Lee Lim to serve three years and four months in the state prison, and if he had served the whole of such sentence, he would have been entitled to a discharge, and, under the authorities, the trial court would be without jurisdiction to impose additional punishment. In the supposed case there would be

the same miscarriage of justice that the prevailing opinion suggests would follow a discharge of the defendant in this case, and yet the court in the supposed case would be powerless to do anything in the premises. As a matter of evenhanded justice, the defendant in the supposed case is entitled to no better treatment at the hands of the state than is the defendant in the instant case. In the supposed case as in this case the fault lies with those whose duty it is to enforce and administer the law. If either the state or the defendant must suffer because of such fault, it should be the state and not the defendant. The miscarriage of justice that would follow from the immediate discharge of the defendant resulting in his serving two years and six months less than the term which he should serve under his sentence of ten years (assuming his behavior while imprisoned is such as to entitle him to the benefits of section 4331, Comp. Laws Utah 1917) is not cured or rendered any the less a miscarriage of justice by taking the other horn of the dilemma and thus require him to serve three years and four months more than the term for which he was sentenced.

 A sentence or judgment may be void, and as such open to attack either collaterally or directly. It may be valid and thus not vulnerable to attack either collaterally or directly. It may be voidable or erroneous, so that it cannot withstand a direct attack but can withstand a collateral attack. The authorities generally recognize these three classes of judgments or sentences, and none other. The sentence under review, in order to escape the injustice of requiring the defendant to serve three years and four months in the state prison without a deduction therefor, seems to proceed upon the theory that the original sentence had some legal existence, apparently that of being voidable or erroneous. Having thus, to that extent, protected the defendant, the sentence then seems to proceed upon the theory that the original sentence was void, and therefore the court had jurisdiction to impose another sentence. It is one of the characteristics of our system of jurisprudence that funda-

mental principles of law may not be disregarded in order that the exigencies of a given case may be met. An adherence to such principles is necessary to the orderly administration of the law. Courts refuse to recognize a hybrid sentence which for one purpose is voidable or erroneous and for another purpose is void. A sentence cannot be wholly void and at the same time be merely erroneous or voidable. The fact that a sentence is void precludes it from being voidable or valid.

In the habeas corpus proceeding the original sentence imposed upon Lim was held to be void. As such, it has no existence in contemplation of law. Upon principle I am unable to perceive how a void sentence may serve the purpose of indefinitely enabling a court to retain jurisdiction to impose a valid sentence when, as in the Flint Case, the court lost jurisdiction to impose any sentence because it ordered that sentence be "suspended and the defendant permitted to go upon his recognizance."

It is said in the prevailing opinion that in the Flint Case "the trial court reached the conclusion that the defendant should not be made to suffer for his crime the punishment provided by statute, at least not presently or during good behavior, and thereupon suspended the imposition of sentence and discharged the defendant." The order in the Flint Case was that "the defendant having been convicted of the crime of forgery, and being now before the court to receive sentence, and the court being sufficiently advised, it is ordered that sentence be, and the same is hereby, suspended, and the defendant permitted to go upon his own recognizance." As I understand the language just quoted, it does not justify the statement that the trial court reached the conclusion that the defendant should not be made to suffer for his own crime or that the trial court intended to permanently discharge the defendant. The fact that the trial court later attempted to impose a sentence upon the defendant would tend to indicate that all the trial court intended

to do was to temporarily suspend sentence. When the original sentence was imposed upon the defendant in the instant case, there can be no doubt but the trial court intended to place him beyond its jurisdiction. The sheriff was ordered to deliver the defendant to the warden of the state prison. So far as the trial court was concerned, the case against Lee Lim was a closed book as soon as Lim was delivered to the warden of the state prison. Those who are confined in the state prison are in no sense within the jurisdiction of the various courts which sentenced them. On the contrary, they are within the exclusive jurisdiction of those whose duty it is to administer the affairs of that institution. Nor can it be said that a delay of three years and four months is a reasonable delay between the plea of guilty and the imposition of the sentence in the instant case, and that a delay of ten and one-half months between the verdict of guilty and the imposition of sentence was an unreasonable delay in the Flint Case. I can perceive of no just or reasonable excuse for holding that the court retained jurisdiction of the defendant in this case for the purpose of imposing sentence upon him and at the same time adhering to the rule announced by this Court in the Flint Case. From whatever angle this case is viewed, the only conclusion permissible in the light of the law announced in the Flint Case is that the trial court was without jurisdiction to impose the sentence here complained of. There are cases which reach a different result, and there were such cases at the time the Flint Case was decided. In addition to the cases cited in the prevailing opinion and in the dissenting opinion of Mr. Justice Straup herein, a list of cases dealing with the question here presented will be found collected in the case of *Mackelprang* v. *Walker,* supra. It may be that the court, as at present constituted, would have reached a different result had they participated in the Flint Case, but, unless we are thoroughly convinced that the Flint Case is wrong, I think we should follow the law as there announced. The construction placed upon a statute by a court should not be

rejected merely to conform to the views of a changed personnel of the court.

Our Code of Criminal Procedure, title 120, chap. 37, Laws of Utah 1917 (section 9041 et seq.), fixes the time within which a court shall pronounce judgment after a plea or verdict of guilty. Since the Flint Case was decided, February 13, 1903, Legislatures have come and gone, but no amendment has been made in the statute with respect to the time within which the court shall pronounce judgment after a plea or verdict of guilty. This is not a case where the court exercised, or attempted to exercise, the power to suspend sentence as provided for in chapter 74, Laws of Utah 1923. The Legislature is apparently satisfied with the construction of the statute relating to the time when judgment or sentence shall be imposed in a criminal case as announced in the Flint Case, and therefore, as I think, this court should be content with such construction.

I am of the opinion that the judgment and sentence appealed from should be reversed, and the defendant discharged.